

# Missouri Court of Appeals

## Southern District

### Division Two

PHILIP H. BERGER,                      )
                                       )
    Plaintiff-Appellant,           )
                                       )
v.                                     )    No. SD34288
                                       )
EMERSON CLIMATE                        )    **Filed:  Oct. 5, 2016**
TECHNOLOGIES, SCROLL                   )
COMPRESSORS LLC, and GEORGE            )
SVARANOWIC,                            )
                                       )
    Defendants-Respondents.        )

### APPEAL FROM THE CIRCUIT COURT OF LACLEDE COUNTY

#### Honorable Kenneth M. Hayden

**REVERSED AND REMANDED**

Philip H. Berger ("Employee") appeals the judgment ("the dismissal judgment") that dismissed with prejudice his second amended petition ("the petition") against Emerson Climate Technologies ("Emerson"), Scroll Compressors LLC ("Scroll"), and George Svaranowic (collectively, "Respondents").

The petition presented three counts:  (1) ("the discrimination claim") Respondents intentionally and outrageously discriminated against Employee between November 2013 and March 2015 in violation of the Missouri Human Rights Act, section 213.010 et. seq.[1] ("the MHRA"), by not reasonably accommodating Employee's disability after Employee

---

[1] Unless otherwise indicated, all statutory references are to RSMo 2000.  All rule references are to Missouri Court Rules (2016).

1

received a verdict for money damages in his lawsuit against Respondents ("the Copeland case" or "the Copeland trial") "for injuries to his lungs from exposure to dangerous chemical products in [Respondent]s' work environment";[2] (2) ("the retaliation claim") Respondents retaliated against Employee in violation of the MHRA based upon his "reports and complaints of discrimination"; and (3) ("the wrongful discharge claim") Employee was wrongfully discharged in violation of a "public policy" allowing "access to the courts for redress of wrongs" when Respondents discharged him after the jury's verdict in the Copeland trial.

Employee presents seven points on appeal that contend the trial court erred in granting Respondents' motion to dismiss the petition ("the dismissal motion") because: (1) Employee was not judicially or collaterally estopped from asserting his claims; (2) the petition properly pleads claims for disability discrimination, retaliation, and "wrongful termination in violation of public policy"; and (3) Emerson was operating as "an integrated entity" with Scroll, and Emerson was acting in the interest of an employer of Employee.

Finding merit in Employee's first five points (and the last two moot), we reverse the dismissal judgment and remand the case.

**Applicable Principles of Review and Governing Law**

We review *de novo* the trial court's grant of a motion to dismiss. ***Lang v. Goldsworthy***, 470 S.W.3d 748, 750 (Mo. banc 2015); ***Avery Contracting, LLC v. Niehaus***,

---

[2] Employee's suggestions in opposition to Respondents' motion to dismiss his second amended petition asserted that the Copeland case was against "Copeland Compressor Corporation" ("Copeland") based on "conditions within the plant where [Employee] worked[.]" A new trial was granted in the Copeland case, and this court affirms that judgment in ***Berger v. Copeland Corporation, LLC***, No. SD34193, handed down this same day. The petition in the instant case does not expressly allege that Copeland is a part of one or more of Respondents or vice versa, and the "First Petition" in the Copeland case did not name Respondents as defendants. Without finding it as a fact, but simply for convenience in analyzing the legal issues in this appeal, we will assume that the facility in which Employee worked for purposes of the Copeland case and the facility he alleges he tried to return to after the Copeland trial are one and the same, a place we will refer to as "the plant."

492 S.W.3d 159, 161-62 (Mo. banc 2016). "When considering whether a petition fails to state a claim upon which relief can be granted, this Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader." *Bromwell v. Nixon*, 361 S.W.3d 393, 398 (Mo. banc 2012). As a result, no factual averments are weighed for their credibility or persuasive effect. *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 306 (Mo. banc 1993). "Evidence outside the pleadings cannot serve as the basis for granting a motion to dismiss." *In re Estate of Ridgeway*, 369 S.W.3d 103, 109 (Mo. App. E.D. 2012). A trial court goes beyond a petition when it takes judicial notice of matters in another court file that were not incorporated into the challenged pleading. *Cf. Chesterfield Vill., Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318 n.1 & 5 (Mo. banc 2002) (the earlier judgment was described in the petition and attached to it as an exhibit, thus "the circuit court had the earlier judgment before it and did not need to refer to matters outside the pleadings"); *Gardner v. City of Cape Girardeau*, 880 S.W.2d 652, 654-55 (Mo. App. E.D. 1994) ("the trial court did not confine itself to the face of the petition, but rather treated the motion as a request for summary judgment" as it "considered and took judicial notice of" jury instructions "and the circuit court records" in a previous case). Indeed, "neither the trial court nor the appellate court on *de novo* review may consider matters outside the pleadings when adjudging a motion to dismiss." *Naylor Senior Citizens Hous., LP v Side Constr. Co.*, 423 S.W.3d 238, 241 n.1 (Mo. banc 2014).

## Background

Employee filed his original petition in the instant case in November 2014, and Respondents responded with a motion to dismiss. Employee filed a first amended petition, and Respondents moved to dismiss that petition. An April 2015 docket entry reflects that

3

the trial court held a hearing, and, after having taken judicial notice of the court file and transcripts from the Copeland case, granted Respondents' second motion to dismiss (without prejudice) "for the [r]easons [s]et [f]orth [i]n" it. Employee responded by filing the petition at issue in this appeal.

The averments in the petition include, *inter alia*, that: Employee brought the Copeland case "against [Respondents] and others based on conditions in the plant that were negatively impacting [Employee]'s health"; Employee shifted to a different area of the plant as a result of his health conditions; Employee worked at the plant "until the week before trial" of the Copeland case in an area of the plant that "had the presence of chemicals that aggravated [Employee's] condition." The petition alleges that Respondents "were already aware of [the] type of work environment that [he] would need[,]" and a reasonable accommodation would have been to place Employee in an open warehouse position for which he was qualified.

In alleging facts about evidence presented at the Copeland trial, the petition refers to testimony from two doctors who testified on Employee's behalf as expert witnesses. One doctor "testified that he believed [Employee] was doing fine and could continue working, including working at [the plant]." The other doctor testified that if Employee continued to work "'the approach would be to minimize the exposure to those environments'" that triggered Employee's health problems.

The petition avers that after Employee received a favorable verdict in the Copeland trial, he "attempted to return to work" but was told "that he would not be allowed to return to work." The petition also alleges that Employee was later told by Mr. Svaranowic that he

4

"would not be allowed to return to work unless he provided medical documentation clearing him to return or explaining what limitations he might have."

Employee's subsequent complaint to the Missouri Commission on Human Rights and a "right to sue" letter issued by that commission are attached to the petition, but no other materials or exhibits are attached to or incorporated into the petition. Additional averments from the petition will be discussed in our analysis of points 3 through 7.

Respondents filed the dismissal motion with supporting suggestions. The dismissal motion contends, *inter alia*, that: (1) Employee's position on his disability as expressed in the Copeland case judicially estopped him from asserting in the instant case that his disability could be accommodated; and (2) Employee's litigation in the Copeland case of his "ability to perform his job" collaterally estopped him from re-litigating that same issue in the instant case. The dismissal motion also asserts that each of the petition's counts fail to state a claim. Additional details from the dismissal motion will be addressed in our analysis of points 3 through 7.

Respondents incorporated their prior briefing in support of their motion to dismiss the first amended petition, and Respondents cited materials outside the petition, including the trial transcript, the jury's verdict, and the initial judgment in the Copeland case. The citations to the Copeland trial transcript include testimony from two doctors Employee had called as witnesses and an expert on economic damages. The exhibits included in Respondents' prior briefing were the petition in the Copeland case, four separate, multi-page portions of the Copeland trial transcript, and the "AMENDED FINAL JUDGMENT" in the Copeland case. Portions of these materials relevant to an analysis of judicial estoppel will be described in our analysis of points 1 and 2.

5

Employee filed suggestions in opposition to the dismissal motion ("Employee's suggestions") that addressed the concept of treating the dismissal motion as a motion for summary judgment (without objecting to that procedure), made similar arguments against the dismissal motion as were made against Respondents' motion to dismiss the first amended petition, and incorporated similar exhibits.

A hearing was held on the dismissal motion, but no transcript of that hearing is included in the record on appeal. Docket entries indicate that the trial court took the motion under advisement after hearing argument and after taking judicial notice of the legal file and transcripts from the Copeland case. Nothing in the record indicates the trial court notified the parties that it would be treating the motion to dismiss as a motion for summary judgment, and the trial court did not indicate what it found to be the undisputed material facts established by the various materials submitted by the parties in support of and in opposition to the dismissal motion. The stated rationale for entering the dismissal judgment was "the reasons set forth in [the dismissal motion.]" Employee filed an amended motion to reconsider, and it was deemed denied when the trial court did not rule on the motion within 90 days. *See* Rule 78.06; *cf. **Taylor v. United Parcel Serv., Inc.***, 854 S.W.2d 390, 392-93 (Mo. banc 1993) (treating a motion to reconsider as a motion for new trial). This appeal timely followed.

**Analysis**

*Points 1 and 2 ─ Judicial and Collateral Estoppel*

We first take up point 2, which challenges collateral estoppel as a basis for granting the dismissal motion. Because both sides indicated in their briefing that a new trial was ordered in the Copeland case, we consider that fact as though it were a part of the record.

*See New Madrid Cty. v. St. John Levee & Drainage Dist.*, 436 S.W.3d 573, 574 n.2 (Mo. App. S.D. 2013).  During oral argument, Respondents' counsel informed this court that there is presently no final judgment in favor of Employee in the Copeland case, and he further stated that "today collateral estoppel is no longer a grounds for dismissing" the petition. Based upon that concession, we grant Employee's second point.  *See Ellis v. Hehner*, 448 S.W.3d 320, 330 (Mo. App. E.D. 2014) (collateral estoppel requires a judgment on the merits).

Point 1 claims the trial court erred in dismissing the petition with prejudice based upon an application of judicial estoppel because "Missouri law allows application of judicial estoppel to bar a claim only when a party's later position is clearly inconsistent with its earlier position" and Employee "has not taken a position that is inconsistent with the position taken in [the Copeland case.]"[3]

"[J]udicial estoppel embodies the notions of common sense and fair play." *Egan v. Craig*, 967 S.W.2d 120, 126 (Mo. App. E.D. 1998).  "Missouri courts in particular have consistently refused to allow litigants to take contrary positions in separate proceedings to ensure the integrity of the judicial process." *In re Contest of Primary Election Candidacy of Fletcher*, 337 S.W.3d 137, 146 (Mo. App. W.D. 2011).  There is no precise formula for determining whether judicial estoppel applies, *Vinson v. Vinson*, 243 S.W.3d 418, 422 (Mo. App. E.D. 2007), but three considerations have commonly been used to guide the determination:  "(1) a party's later position was clearly inconsistent with its earlier position, (2) the party succeeded in persuading a court to accept the earlier position, and (3) . . . the party asserting inconsistent positions would derive an unfair advantage or impose an unfair

---

[3] Point 1 asserts additional reasons why, in Employee's view, the trial court erred in applying judicial estoppel in this case, but given our resolution of this primary argument, we need not address the others.

detriment on the opposing party." **Minor v. Terry**, 475 S.W.3d 124, 133 (Mo. App. E.D. 2014); *see also **Zedner v. U.S.***, 547 U.S. 489, 505 (2006).

The petition avers that Respondents discriminated against Employee by not reasonably accommodating his disability under the MHRA when he returned to the plant after the Copeland trial, retaliated against him based on his reports and complaints of discrimination, and then wrongfully discharged him for accessing the courts as his filing of the Copeland case was "a contributing factor in [Respondent]s' decision to prevent [Employee] from returning to work and earning an income." We agree with Employee that the petition does not identify a position taken by Employee during the Copeland case that is *clearly inconsistent* with the positions he has taken in the instant case. For instance, the petition does not aver that Employee's prior position was that he could not work at the plant in a position for which he was qualified if a reasonable accommodation were made for him. *See* sections 213.010(4), 213.055.1(1)(a), and 213.070(2).

Assuming, *arguendo*, that our analysis of judicial estoppel in the instant case could include a review of materials outside the petition (for example, portions of the Copeland trial transcript), nothing in that expanded review would support a finding that Employee had taken a *clearly* inconsistent position in the Copeland case.[4] In his brief, Employee rightly insists that "no positions were taken or conclusions reached in the [Copeland case] as to

---

[4] Despite Employee's references in its appellate brief to the dismissal motion as "Respondents' Motion to Dismiss and/or Motion for Summary Judgment[,]" Respondents' counsel took the position at oral argument that the dismissal judgment was *not* a judgment deciding a summary judgment motion. Of course, a motion to dismiss may be converted to a summary judgment motion and then uncontroverted facts outside the petition's allegations may be considered, *if* the proper procedure is followed. *See **Naylor Senior Citizens Hous.***, 423 S.W.3d at 241 n.1. Respondents' counsel nonetheless argued that it was appropriate for the trial court to take judicial notice of the entire file in the Copeland case based on language in **Chesterfield Vill.**, 64 S.W.3d at 315. We first observe that the issue in that case was *res judicata*, not judicial estoppel. More importantly, the single item judicially noticed by the trial court in **Chesterfield Vill.** was a *judgment* "attached as an exhibit in the second action[.]" Thus, the document at issue was the trial court's own judgment, not a deposition transcript, and because the judgment was attached to the pleading, the trial court "did not need to refer to matters outside the pleadings[.]" *Id.* at 318 n.1. As a result, **Chesterfield Vill.** is of no help to Respondents.

8

whether . . . a reasonable accommodation was available to him that would allow him to perform his duties[.]" A "threshold issue" under the MHRA is whether the person is "disabled within the statute." *Medley v. Valentine Radford Commc'ns, Inc.*, 173 S.W.3d 315, 321 (Mo. App. W.D. 2005). "[T]o be disabled under the MHRA, [the plaintiff] must be able to show that she has an impairment but can work *with* or without *reasonable accommodation*." *Id.* (emphasis added); *see also* section 213.010(4).

Respondents claim Employee's position that he could "continue to work with reasonable accommodation is clearly inconsistent with" his position taken in the Copeland trial, but the evidence they cite does not support that claim. Respondents point to Dr. Allen Parmet's testimony recommending that Employee "ought to leave" the plant and that he did not think Employee would "be able to continue to work[.]" Doctor Parmet stated: "*If* he is declining, even removed where he is now with his controlled medication, I would recommend he be removed." (Emphasis added.) The doctor is not cited as offering an opinion about Employee's ability to work at the plant if "reasonable accommodations" were made.

The same fundamental problem plagues Respondents' reliance on Copeland trial testimony from Dr. Peter Tuteur that "the best thing for [Employee] would be to be out of that environment now[,]" and testimony from Dr. Jack Ward (an economic damages expert) regarding differing economic damages depending on whether Employee were to retire immediately at the age of 55 (based on an assumption that "he really needs to retire now") or if he were to retire seven years later at the age of 62. In fact, Dr. Tuteur testified that *if* Employee continued to work, he should minimize his exposure to environments harmful to his lungs. Again, none of this testimony clearly addressed whether Employee could work at

the plant with a reasonable accommodation. *Cf. **Cleveland v. Policy Mgmt. Sys. Corp.**,* 526 U.S. 795, 803 (1999) (reversing summary judgment against a worker for an Americans With Disabilities Act ("ADA") claim because "an ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with an [Social Security Disability Insurance] claim that the plaintiff could not perform her own job (or other jobs) *without* it"). None of these distinctions would prevent a fact-finder from eventually deciding that Employee would be unable to work at the plant either with or without a reasonable accommodation, but such hedging is an insufficient foundation upon which to build a case for the application of judicial estoppel.

Finally, Respondents argue that "[i]n closing argument [in the Copeland trial, Employee's] attorney argued that his client's lost earnings were 'about a million dollars' because he needed 'to get out of there.'" The cited language comes from the following passage of the trial transcript:

> And so the economic damages that [Employee] suffered that's on that chart is about a million dollars. So that's the benchmark for the economic damages that he will suffer.
>
> And that was *originally based on retiring at 62. And now if you believe that he ought to get out of there, that's the economic damages that we're talking about.* (Emphasis added.)

The economic damages calculated for an immediate retirement at age 55 are not made clear, and the record does not reveal whether a figure greater than a million dollars based on an immediate retirement was represented on the "chart" to which the attorney was apparently directing the jury's attention.

In any event, it appears that an immediate retirement figure would be based upon Employee not returning to the same position he had at the time of trial; it cannot be said that

10

this was a *clear* representation that Employee not only had to retire from his current position but would also be completely unable to work again, even in a different, accommodated position. To the contrary, Employee's position in the petition is that he had been working in an area of chemical exposure at the time of trial but there were "open positions for employment in the warehouse" *after* the Copeland trial "which would not expose [Employee] to metal working fluids (MWF), and for which [Employee] was qualified." The petition also asserts that placing Employee in a warehouse job "would have been a reasonable accommodation that would not impose any hardship on [Respondents]." Employee may, of course, be called upon to explain various aspects of the positions he took in the Copeland case as the instant case moves forward, but the prior positions cited by Respondents are not sufficiently clear to support the trial court's decision to prevent Employee from pursuing his claims by the application of judicial estoppel. Point 1 is granted.

## *Point 3 ─ The Discrimination Claim*

Respondents sought dismissal of the discrimination claim on the ground that Employee "fails to plead in good faith that a position existed with [Respondents] (a) which is vacant, and (b) for which [Employee] is qualified[.]" In their brief, Respondents rely on *Umphries v. Jones*, 804 S.W.2d 38, 41 (Mo. App. E.D. 1991), and *Berkowski v. St. Louis Cnty. Bd. of Election Comm'rs*, 854 S.W.2d 819, 827 (Mo. App. E.D. 1993), as support for this claim.[5] The *Umphries* decision construed an older version of the statue that used the term "handicap" instead of "disability," but, consistent with the more recent *Medley* opinion,

---

[5] Respondents also contend that Employee's "allegation that a vacant position exists that satisfies his stringent medical criteria violates Rule 55.03(c) and need not be accepted." This rule addresses the representations made by a party and his counsel by virtue of presenting and filing matters with the court. This argument, of course, assumes that Employee clearly represented to the court in the Copeland case that no accommodation would enable him to work at the plant – a position we reject in our analysis of point 1.

11

it teaches that "if reasonable accommodations can be made so the employee can perform the job[,]" then the person's physical condition does not remove them from the protections of the MHRA. *Cf. Umphries*, 804 S.W.2d at 41, and *Medley*, 173 S.W.3d at 321.

The employee in *Umphries* was appealing a school board's post-hearing decision that the employee should be suspended from one position and reassigned to another, and the board's decision was affirmed. 804 S.W.2d at 40 and 41. The case did not hold that an accommodation to a different position is not an accommodation under the MHRA, rather it found that "[e]mployers are not required to find another job for an employee who is not qualified for the job he or she was doing although an employer cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies. *Id.* at 41.

*Berkowski* involved a motion to dismiss for failure to state a claim, and it is still consistent with the more recent decision in *Hervey v. Mo. Dept. of Corr.*, 379 S.W.3d 156, 160 (Mo. banc 2012), regarding a plaintiff's burden of proof in a disability discrimination claim: "(1) the plaintiff is legally disabled; (2) the plaintiff was discharged; and (3) the disability was a factor in the plaintiff's discharge." *See Berkowski*, 854 S.W.2d at 826. *Berkowski* also teaches that "an employer cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies." *Id.* In that case, however, the employee failed to allege that "there was a vacant position for which she was qualified." *Id.* at 827.

Here, the petition alleges that Respondents "were already aware of they [sic] type of work environment that [Employee] would need" from evidence presented at the Copeland trial, but they "refused to allow [him] to return to work[,]" they "constructively terminated

12

[his] employment[,]" and his termination was "effective March 2015." It also avers that a reasonable accommodation was available "in an open position in the warehouse or in another position where there [are not exposures that would] exacerbat[e] his lung disease" and Respondents "have refused to provide a reasonable accommodation" by allowing Employee to work in one of those open positions or take measures to ascertain whether there were other acceptable areas in which Employee could work.

The petition does not fail to state a claim for discrimination for the reasons asserted by Respondents and adopted by the trial court in the dismissal judgment. Point 3 is granted.

*Point 4 ─ The Retaliation Claim*

Respondents sought dismissal of the retaliation claim because Employee's filing of the Copeland case "is not 'protected activity' within the meaning of the MHRA[,]" and Employee did not plead facts showing that his complaints about discrimination contributed to Respondents' actions in terminating him. Their position is that "[i]t is not possible for Respondents to have retaliated against [Employee] in November 2013 for engaging in protected activity when he did not complain about disability discrimination until December 2013 and February 2014." Respondents also contend that the retaliation claim rests on the conclusory allegation in the petition that their "conduct constitutes retaliation for [Employee's] reports of discrimination."

Employee contends that the petition avers facts satisfying the elements for such a cause of action. "To establish a prima facie case of retaliation under the MHRA, a plaintiff must prove that: (1) he complained of discrimination; (2) the employer took adverse action against him; and (3) a causal relationship existed between the complaint and the adverse

13

action." ***McCrainey v. Kansas City Mo. Sch. Dist.***, 337 S.W.3d 746, 753 (Mo. App. W.D. 2011); *see* section 213.070(2).

Employee's averments in the petition concerning retaliation include that his lawyer reported the discrimination to "members of management and to human resources" in December 2013; and then, in February 2014, Employee "filed a charge of discrimination[.]" The petition alleges that Respondents retaliated against him "by failing to conduct an investigation into his complaints of discrimination[, . . .] failing to take appropriate remedial action in response to his complaints[, . . .] refusing to allow [him] to return to work, refusing to conduct testing to evaluate the safety of the work environment, and by opposing [his] application for unemployment benefits[, . . . . and] by terminating [his] employment." The petition alleges that Employee was terminated in March 2015. The petition also alleges that Employee's "reports and complaints of discrimination . . . contributed to [Respondents'] retaliatory acts against [him]." In reviewing whether a claim has been stated, we must assume that the averments in the petition, and the reasonable inferences flowing from them, are true. ***Nazeri***, 860 S.W.2d at 306. The petition alleges enough specific facts to claim that adverse action was taken against Employee after he made at least one complaint of discrimination in February 2014 because it is reasonable to infer that a claim for unemployment compensation would only be made after a termination of employment. *See **Walsh v. City of Kansas City***, 481 S.W.3d 97, 106 (Mo. App. W.D. 2016) (discrimination complaint may be only one of the contributing factors leading to "an act of reprisal against the claimant"). It is, of course, possible that something other than retaliation motivated Respondents' termination of Employee, but one reasonable inference from Employee's allegations that Respondents did not permit him to work at the plant at all after the Copeland

14

trial and refused to place him in an open position that he was qualified to fill is that his termination was in retaliation for his reports and complaints of discrimination. Point 4 is granted.

<i>Point 5 ─ The Wrongful Discharge Claim</i>

Respondents maintain in the dismissal motion that the wrongful discharge claim should be dismissed because Employee's "allegations establish that he voluntarily left his employment and was not terminated." Respondents argue that Employee "voluntarily left his employment when he declined to provide the requested note from his doctor clearing him to return to work." But the petition avers that Respondents were already aware of Employee's medical needs in relation to his workplace from testimony presented at the Copeland trial, and our review is not to determine whether Respondents suggest a viable defense to Employee's claim. "The issue is not whether the plaintiff is entitled to a judgment in his favor, rather it is whether he is entitled to be heard on his claim." *Rychnovsky v. Cole*, 119 S.W.3d 204, 210 (Mo. App. W.D. 2003). In addition to averring that Employee "was denied entry to the workplace" in November 2013 when he "attempted to return to work" after the Copeland trial, and that Respondents refused to allow Employee to return for over a year, the petition also avers that Employee was terminated in March 2015. The petition further alleges that these acts were "in retaliation for [Employee] accessing the courts and seeking a remedy for his work environment that contained dangerous chemicals harmful to and injurious to the employees in that work environment."

The wrongful discharge claim adequately alleges a termination. Point 5 is granted.

15

*Points 6 and 7 ─ Emerson's Role*

Employee contends in his sixth point that the trial court erred in dismissing Emerson from the case because an "employer" for purposes of the MHRA includes "'persons directly acting in the interest of an employer[,]'" and Emerson directly acted in Scroll's interest. *See* section 213.010(7). Point 7 claims it was error to dismiss Emerson because Emerson operated as one with Scroll as to "constitute an integrated entity[.]" These points are moot as they do not address rulings made in the dismissal judgment. *Cf.* ***Merlyn Vandervort Inv., LLC v. Essex Ins. Co.***, 309 S.W.3d 333, 336 n.2 (Mo. App. S.D. 2010) (appellant's argument that insurance policy endorsement provided coverage beyond "unendorsed policy limits" was not addressed on appeal because it was not an issue included in the grant of the respondent's motion for summary judgment).

It is true that the dismissal with prejudice was in favor of all Respondents based upon "the reasons set forth in" the dismissal motion, and the dismissal motion generally contends that the grounds remained the same as those in Respondent's previous motion to dismiss the first amended petition. But, as the dismissal motion points out, the petition adds a new sentence regarding Emerson to two existing paragraphs and also includes eight new paragraphs "relating to the issue of whether [Emerson] is [Employee's] joint employer." One of the new paragraphs alleges that Emerson operated Scroll and another alleges that Emerson "provid[ed] employment policies and otherwise manag[ed] employees of [Scroll.]"

As a part of their discussion of the newly added allegations in the petition, Respondents do not reassert a challenge to Emerson's alleged role; they simply note that "[t]hese new paragraphs do nothing to address the main deficiencies that caused the [f]irst [a]mended [p]etition to be dismissed such as judicial estoppel and collateral estoppel." The

16

dismissal motion does not claim that the petition must be dismissed against Emerson because the petition failed to allege facts supporting a claim that Emerson directly acted in the interest of Scroll.

While Respondents now argue in their brief that "[t]here is no good faith basis on which [Employee] can allege he is also employed by [Emerson]" and no direct participation by Emerson is alleged in the petition, these arguments are insufficient to belatedly assert theories supporting a position that Employee failed to state claims against Emerson. "A court of appeals may not review a case upon a theory different from that which was presented to the trial court." *City of Univ. City v. AT & T Wireless Serv.*, 371 S.W.3d 14, 22 (Mo. App. E.D. 2012). Points 6 and 7 are dismissed as moot.

The dismissal judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.


DON E. BURRELL, P.J. – OPINION AUTHOR

GARY W. LYNCH, J. – CONCURS

WILLIAM W. FRANCIS, JR., J. – CONCURS