

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| HENRY JAMES FOLSOM, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD82081 |
| | ) | |
| MISSOURI STATE HIGHWAY | ) | FILED: August 20, 2019 |
| PATROL and SARAH | ) | |
| EBERHARD, | ) | |
| Respondents. | ) | |

### Appeal from the Circuit Court of Cole County
### The Honorable Jon E. Beetem, Judge

### Before Division Four: Karen King Mitchell, C.J., and
### Alok Ahuja and Anthony Rex Gabbert, JJ.

Henry Folsom sued his former employer, the Missouri State Highway Patrol, and his Highway Patrol supervisor, Major Sarah Eberhard (collectively "the Highway Patrol"), in the Circuit Court of Cole County. Folsom claimed that the Highway Patrol discriminated against him on the basis of his disability (post-traumatic stress disorder) when it terminated his employment as a Trooper. Folsom alleged that the Highway Patrol's actions violated the Missouri Human Rights Act, chapter 213, RSMo.

The circuit court granted summary judgment to the Highway Patrol. Folsom appeals. He contends that summary judgment was inappropriate because there was a genuine issue of material fact whether the Highway Patrol should have offered him an alternative position in which he was capable of working, as a reasonable accommodation for his disability. We conclude that Folsom failed to

present a genuine factual issue whether an alternative position was available which would have accommodated the highly restrictive conditions under which he was able to work. We accordingly affirm the circuit court's grant of summary judgment to the Patrol.

## Factual Background

Folsom was employed as a Trooper with the Highway Patrol starting in January 1997. Folsom was diagnosed with post-traumatic stress disorder ("PTSD") after he was involved in a work-related shooting in 2000. In September 2012, when Folsom had the rank of sergeant and was a criminal investigator with the Highway Patrol, he was involved in a second work-related shooting. This second shooting incident exacerbated his PTSD. Folsom did not return to work at the Patrol after the 2012 shooting. Once he used up his available leave time, Folsom's employment with the Highway Patrol was terminated in December 2014.

Folsom testified that he asked for an accommodation for his PTSD in late 2012 and in 2013, but was told by his supervisors that if he could not perform his duties as a Trooper, no other accommodation would be made for him.

Following the 2012 shooting, Folsom saw a series of mental health professionals, each of whom concluded that he was incapable of performing his former duties with the Highway Patrol. First, Folsom saw Dr. Steven Akeson, a clinical psychologist. On January 21, 2013, following his third session with Folsom, Dr. Akeson noted that "[a]t this time it is my opinion that [Folsom] is not yet ready to return to work." Dr. Akeson did, however, note that "[a] graduated return to work related duties would be anticipated but more specific limitations would depend on progress."

In December 2013, Dr. David Lutz, a clinical psychologist, conducted a fitness for duty evaluation on Folsom at the request of the Highway Patrol. During the examination, Dr. Lutz noted that Folsom,

2

would have great difficulty returning to his job in a safe and effective manner. He had made it clear that he will not put himself in such a situation [where use of a firearm might be required] again. The fact that he has gone through two shooting incidents heightens his vulnerability for symptoms even further. If he were [to] return to his job, he likely would put himself and others at risk. The job description contains statements such as, "Ability to function effectively in high-pressure and stressful situations." [Folsom] would not be able to function effectively in such a situation, as his symptoms, including hypervigilance and hyperresponsiveness, are likely to be reactivated even more easily.

Dr. Lutz concluded that Folsom "is not psychologically capable of returning to his job with the Missouri State Highway Patrol."

In June 2014, Folsom met with Dr. Wayne Stillings. According to Dr. Stillings' report, Folsom told him that because of his experience in the two prior shooting incidents, "he will never work in law enforcement again. Because his PTSD gives him false signals of being under threat, he is fearful of pulling a gun and shooting someone when they are merely reaching into their back pocket for a wallet, etc."

Between October and December 2014, Dr. Edwin Wolfgram interviewed Folsom. In his report, Dr. Wolfgram indicated that Folsom would not be able: "to understand, remember, and carry out simple instructions"; "to make judgments that are commensurate with the functions of unskilled work – i.e., simple work related decisions"; "to respond appropriately to supervision, coworkers and usual work situations"; or "to deal with changes in a routine work setting."

In addition, in May 2015 Folsom was seen by Phillip Eldred, a certified rehabilitation counselor. After reviewing Folsom's medical records, Eldred concluded that Folsom "has not been able to work for approximately one and one-half years and as a practical matter he will not be able to return to competitive, gainful employment."

3

Folsom testified that he was receiving disability benefits from the Social Security Administration, from the Veterans Administration, and from a private disability insurance policy. Folsom also received an award of an unspecified amount as a result of a worker's compensation claim that he filed.

After his employment with the Highway Patrol was terminated in December 2014, Folsom filed a complaint with the Missouri Human Rights Commission, alleging disability discrimination in violation of the Missouri Human Rights Act. After receiving a right to sue letter, Folsom filed his petition against the Patrol in the Circuit Court of Cole County.

During discovery, the Highway Patrol served an interrogatory on Folsom which asked him to "[s]tate each accommodation [he] maintain[s] would have permitted [him] to return to duty and fulfill the ordinary requirements of [his] employment." Folsom responded by stating: "If I had been granted a position with limited social contact, as my treatment providers indicated, I could have possibly digressed [*sic*] my PTSD to a point where I could have returned to full duty."

During his deposition, Folsom was asked about the treatment plan referenced in this interrogatory response. Folsom testified that Dr. Akeson had a plan,

> [w]here I would, like, come back to work for maybe four hours the first week, eight hours the next week and kind of gradually assimilate back into the work force. And a lot of it was – so like in the beginning I would have no social contact, no enforcement duties, no contact with citizens. Just basically showing up, being acclimatized to being back at work. And then it would kind of digress [*sic*] from there, more hours, maybe a little bit more social contact then eventually dealing with the public.

Although he was found to be unfit for duty as a Trooper, Folsom stated in his deposition that the Highway Patrol could have accommodated him "like they do for other people." He stated in his deposition that he "[c]ould have answered the telephone[,] [c]ould have filed papers[,] [or] could have stuffed envelopes." Folsom claimed the Highway Patrol had previously accommodated other Troopers who had

4

physical or mental health issues (including pregnancies, serious cancer diagnoses, or orthopedic injuries) by letting those employees perform clerical or other administrative work, so that they did not have to consume their sick leave until they were able to resume their duties as Troopers.

When asked for the jobs to which he requested a transfer, Folsom stated that he "didn't say any specific jobs. I just said another job in Jefferson City. I knew they had all kinds of jobs there, but I didn't specifically request a job." When asked to clarify what he meant by "all kinds of jobs there," Folsom stated "answer telephone, CQ duty at the academy. You know, there's always something go – somebody hurt up there working or doing something. I knew that they had something I could do up there probably."

After the close of discovery, the Highway Patrol moved for summary judgment, contending that the undisputed evidence established that, because of his PTSD, Folsom was unable to work for the Patrol even with a reasonable accommodation. The circuit court granted the motion. Folsom appeals.

**Standard of Review**

"This Court reviews a grant of summary judgment *de novo*." *Gall v. Steele*, 547 S.W.3d 564, 567 (Mo. 2018) (citing *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. 1993)). "Summary judgment shall be entered if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Wilmes v. Consumers Oil Co. of Maryville*, 473 S.W.3d 705, 714 (Mo. App. W.D. 2015) (citation and internal quotation marks omitted); *see* Rule 74.04(c)(6).

> A defending party can demonstrate entitlement to summary judgment by showing: (1) facts negating any of the claimant's necessary elements; (2) the claimant, after an adequate period of discovery, has been unable, and will not be able, to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) there is no genuine dispute of the existence of facts

5

required to support the defending party's properly pleaded affirmative defense.

*Scottsdale Ins. Co. v. Addison Ins. Co.*, 448 S.W.3d 818, 826 (Mo. 2014) (citing *ITT Commercial*, 854 S.W.2d at 381).

### Analysis

Folsom argues that the circuit court erred in granting the Highway Patrol's motion for summary judgment. He contends that genuine issues of material fact existed as to whether he could have maintained his employment if the Patrol had reasonably accommodated his PTSD by placing him in a non-Trooper position.

The Missouri Human Rights Act prohibits an employer from discharging or otherwise discriminating against an employee because of the employee's disability. § 213.055.1(1)(a), RSMo. "To establish a *prima facie* case under the [Missouri Human Rights Act] the plaintiff must show that: (1) he is legally disabled; (2) he was discharged or suffered an adverse employment action; and (3) the disability was a factor in his discharge or adverse employment action." *Baldridge v. Kansas City Pub. Sch.*, 552 S.W.3d 699, 710 (Mo. App. W.D. 2018) (citing *Harvey v. Mo Dep't of Corr.*, 379 S.W.3d 156, 160 (Mo. 2012)).[1] The Act defines a disability as "a physical or mental impairment which substantially limits one or more of a person's major life activities . . . which with or without reasonable accommodation does not interfere with performing the job . . . ." § 213.010(5), RSMo. "Reviewing courts have interpreted this statutory definition of disability as having two parts: 1) a person must have an impairment that limits major life activity; and 2) with or

---

[1] Under the interpretation of the Missouri Human Rights Act prevailing at the time of Folsom's termination, "to establish a claim of employment discrimination an employee was required to establish that his or her membership in a protected class was a contributing factor in the employer's decision to take adverse action against the employee." *Davis v. Walgreen Co.*, No. WD81341, 2019 WL 1768405, at *8 (Mo. App. W.D. Apr. 23, 2019) (citation omitted). The "contributing factor" causation standard was abrogated by the General Assembly in 2017. *Id.* *8 n.3 (citing § 213.101.4, RSMo Cum. Supp. 2018). We have not applied the 2017 amendment retroactively to claims which arose before it took effect. *Id.* (citing *Bram v. AT & T Mobility Servs., LLC*, 564 S.W.3d 787, 795 (Mo. App. W.D. 2018)).

6

without reasonable accommodation, that impairment must not interfere with performing the job . . . ." *Wells v. Lester E. Cox Med. Ctrs.*, 379 S.W.3d 919, 924 (Mo. App. S.D. 2012) (citations omitted). Unlike its counterpart federal statutes, the Missouri Human Rights Act "makes the question of whether the job can be performed with or without reasonable accommodation a part of the test to determine whether an employee is disabled." *Medley v. Valentine Radford Comm'ns., Inc.*, 173 S.W.3d 315, 320 (Mo. App. W.D. 2005).

"A 'reasonable accommodation' is an accommodation that does not impose undue financial and administrative burdens on the employer or require fundamental alterations in the nature of the program." *Wells*, 379 S.W.3d at 924 (citations and internal quotations omitted). An accommodation may include "job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, the provision of readers or interpreters and other similar actions." 8 CSR 60-3.060(G)(2); *see also Devor v. Blue Cross & Blue Shield of Kansas City*, 943 S.W.2d 662, 666 (Mo. App. W.D. 1997).

In its summary judgment motion, the Highway Patrol contended that Folsom was not "disabled" within the meaning of the Human Rights Act because the uncontroverted facts established that he was unable to perform his job duties, even with a reasonable accommodation. The evidence is undisputed that from the time of Folsom's second work-related shooting incident in September 2012 until his termination in December 2014, he was incapable of performing his duties as a Highway Patrol Trooper. The summary judgment record indicates that Folsom told multiple mental health professionals that he did not believe he was capable of carrying a firearm, or of responding appropriately to the sort of stressful and confrontational situations to which a Trooper is required to respond. Based on Folsom's statements and their own evaluations, the mental health professionals uniformly agreed that Folsom was unfit for duty as a Trooper. In his briefing to

7

this Court, Folsom concedes that as a result of the exacerbation of his PTSD following the 2012 shooting, "he was not able to perform his then current duties as an enforcement officer."

Although he does not dispute that he was incapable of serving as a Trooper, Folsom argues that the Highway Patrol could have accommodated him by transferring him to another position within the Patrol, such as in a clerical, administrative, or building maintenance function.

> Reasonable accommodation does not require an employer to find another job for an employee who is unable to perform the job he was doing, but an employer cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies. A plaintiff must show not only that an alternative position was vacant, but that he was qualified for that position.

*Snyder v. ICI Explosives USA, Inc.*, 938 S.W.2d 946, 949 (Mo. App. S.D. 1997) (citing *Berkowski v. St. Louis Cnty. Bd. of Election Comm'rs*, 854 S.W.2d 819, 826-27 (Mo. App. E.D. 1993), in turn citing *Umphries v. Jones*, 804 S.W.2d 38, 41 (Mo. App. E.D. 1991)).

Folsom failed to present a genuine factual issue as to whether there was an available, vacant position to which he could have been transferred under the Highway Patrol's existing policies. Folsom testified in his deposition that the Highway Patrol had an established practice of transferring Troopers with health issues to other positions (such as clerical or administrative positions) until the Troopers' health issues resolved and they could return to service as Troopers, so that they "didn't have to burn sick leave." In his deposition, however, Folsom only identified the attributes of the type of position he was seeking (that it involve limited or no social contact), and the type of tasks he was capable of performing (such as clerical, administrative, or maintenance work). When he was specifically asked to identify the particular jobs to which he requested a transfer, Folsom stated that he "didn't say any specific jobs. [He] just said another job in Jefferson City.

8

[He] knew they had all kinds of jobs there, but [he] didn't specifically request a job." When pressed, Folsom was unable to identify any particular, available position into which he could have been transferred, but instead testified that "I knew that they had something I could do up there probably." Folsom failed to identify an available position simply by expressing his general belief that there was "probably" "something [he] could do" at the Highway Patrol's Jefferson City headquarters. *See Noel v. AT & T Corp.*, No. 4:12-CV-1673 CAS, 2014 WL 117606, at *13 (E.D. Mo. Jan. 13, 2014), *aff'd*, 774 F.3d 920 (8th Cir. 2014) ("Plaintiff cannot create a genuine issue of material fact . . . simply by arguing that his employer is a larger company and people have moved around before, so surely he could have transferred to another job. To create an issue of fact, plaintiff must proffer evidence that there was an available job for which he was qualified . . . ." (record citation omitted)).

In addition, Folsom failed to show that the Highway Patrol's policy would have required an accommodation in his circumstances. All of the examples Folsom gave of employees being transferred to light-duty positions involved *temporary* transfers to permit an employee to recover from a physical or mental health condition. In Folsom's case, however, it appears that he would have required a *permanent*, or at least long-term, reassignment to a position which isolated him from some of the core functions of a Highway Patrol Trooper: carrying a firearm; and responding to stressful, confrontational, and potentially dangerous situations. Folsom did not identify any prior example where a Trooper experiencing health problems was given the sort of long-term job re-assignment to which he claims he was entitled.

More importantly, Folsom testified that he would have been capable of returning to the Highway Patrol following the 2012 shooting in only an extremely limited capacity. Thus, he testified that Dr. Akeson had formulated a plan

9

[w]here I would, like, come back to work for maybe four hours the first week, eight hours the next week and kind of gradually assimilate back into the work force. And a lot of it was – so like in the beginning I would have no social contact, no enforcement duties, no contact with citizens. Just basically showing up, being acclimatized to being back at work. And then it would kind of digress [sic] from there, more hours, maybe a little bit more social contact then eventually dealing with the public.

As Folsom's counsel conceded at oral argument, Folsom did not identify any prior case in which an injured employee was given a light-duty assignment that was anything other than full-time. Thus, Folsom cited no precedent for the extremely limited hours, and extremely limited work, that he would have been able to perform for an indefinite period of time. Given Folsom's own testimony as to the severe limitations on his ability to work for the Patrol in _any_ capacity, he failed to demonstrate that there was a genuine factual dispute as to whether a "reasonable accommodation" would have allowed him to retain his employment with the Highway Patrol.[2]

The Highway Patrol showed that, on the undisputed facts, Folsom would be unable to prove that he was "disabled," meaning that he had "a physical or mental impairment . . . which with or without reasonable accommodation does not interfere with performing the job . . . ." § 213.010(5), RSMo. The circuit court did not err in granting the Highway Patrol's motion for summary judgment.

---

[2]    Folsom relies on _Berger v. Emerson Climate Technologies_, 508 S.W.3d 136 (Mo. App. S.D. 2016). But in _Berger_, the Southern District held only that a petition should not have been dismissed for failure to state a claim where the plaintiff alleged that available positions existed which he was capable of performing, and that the employer denied him a reasonable accommodation by refusing to transfer him to one of those available positions. _Id._ at 145-46. _Berger_ addressed only the sufficiency of a plaintiff's petition, _not_ the factual showing a plaintiff must make, after full discovery, to avoid a properly supported summary judgment motion.

## Conclusion

The judgment of the circuit court is affirmed.

_____
Alok Ahuja, Judge

All concur